UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

```
FILED
MAY 11 2009
CLERK, U.S. DISTRICT COURT
NORFOLK, VA
```

JONES, BLECHMAN, WOLTZ & KELLY, P.C., )
)
         Plaintiff, )
)
v. )
) ACTION NO. 4:08cv123
NIKOLAI I. SINKINE and )
TATYANA A. BABAKAEVA, )
)
         Defendants. )
)

## MEMORANDUM IN OPPOSITION

## TO PLAINTIFF'S NOTICE OF VOLUNTARY DISMISSAL

## AND MEMORANDUM IN SUPPORT OF MOTION TO QUASH ATTACHMENT

Defendant Tatyana A. Babakaeva ("Babakaeva"), *pro se*, hereby respectfully submits Memorandum in Opposition to Plaintiff's Notice of Voluntary Dismissal and Memorandum in Support of Motion to Quash Attachment.

### I. INTRODUCTION

After months of equivocation in both State and Federal Courts, Plaintiff finally acknowledged that it is unable to sustain in adversary action any of its claims which it attempted to win in *ex-parte* proceedings. However, the manner in which Plaintiff attempts to terminate this action, by dismissal without Court Order and without prejudice, aims to achieve the very same

1

goal which Plaintiff was trying to pursue by the protracted litigation: to make the August 18, 2008 Order of attachment and appointment of receiver perpetual, while avoiding any liability for attachment of Babakaeva's property as a property of another, and without ever litigating on the merits of the underlying claim. Fortunately, such method of termination of this action is expressly forbidden by Fed.R.Civ.P. 66, and is not proper on other grounds set forth below.

Babakaeva seeks that Notice of Voluntary Dismissal be stricken and the attachment be quashed.

## II. LEGAL STANDARD

In proceedings upon defendant's motion to quash attachment, the plaintiff has burden of proof, Fed.R.Civ.P 64 and Va Code § 8.01-568. *"Upon a motion to abate an attachment, the burden of proof is on the plaintiff to show that the attachment was issued on sufficient cause, and he may therefore be required to introduce his evidence first."* <u>Wright v. Rambo, 62 Va. 158 (1871); Sublett v. Wood, 76 Va. 318 (1882); Burruss v. Trant, 88 Va. 980 (1892)</u>.

## III. FACTS

1. Babakaeva hereby incorporates by reference the facts stated in her Response to Motion to Remand.

2. During the period from January 2006 till November 2007 Plaintiff's staff attorney, Bryan Schemp ("Schempf"), represented Nikolai Sinkine ("Sinkine") in three separate lawsuits in different Courts: 1) as the plaintiff in the divorce action; 2) as the defendant in action for protective order; 3) as the defendant in a criminal action.

3. From about May 1, 2006 and to the end of representation in November of 2007,

Plaintiff advanced Sinkine with all legal fees and court costs associated with all three lawsuits.

4. Additionally, Plaintiff provided maintenance by paying Sinkine's obligations to others.

5. For example, on October 10, 2006 Plaintiff issued a check from its operating account in the amount of $600.00 payable to Babakaeva, as a payment of Sinkine's spousal support obligations to Babakaeva (Exhibit 1)[1]. On that date, Sinkine's trust/retainer account with Plaintiff did not have any funds, and Sinkine was already indebted to Plaintiff for approximately $6,210.00 (Exhibit 2).

6. Plaintiff obtained Sinkine's consent that in exchange for giving advance for legal fees, costs and maintenance, Plaintiff would assert its claim on the proceeds of the sale of the marital house which was at issue in the divorce action. The agreement was memorized in a letter dated January 5, 2007 ("Agreement") which Plaintiff attached to Complaint as a ground for its claim.

7. Sinkine arranged refinancing of the mortgage for the marital house on November 30, 2006 in anticipation of coming settlement agreement in divorce. After reviewing the refinancing contract, the parties' attorneys discovered that it was on very unfavorable terms and would lead to substantial loss of equity, but the right of rescission was still present.

8. Schempf assumed responsibility and obligation to rescind the refinancing contract to prevent the loss of equity, and asserted that he executed the rescission (Exhibits 3 and 4).

9. However, contrary to Schempf's assertions, the refinancing contract was not rescinded.

10. The refinancing of the mortgage lead to the loss in equity in the amount of

---

[1] All exhibits referenced herein refer to the corresponding exhibits attached to Declaration of Tatyana A. Babakaeva accompanying this Memorandum.

approximately $45,000.00.

11. On April 27, 2007 the marital house was sold, and by Sinkine and Babakaeva's mutual agreement the proceeds from the sale of marital domicile ("Funds") were placed in escrow with Paul Wilson of Wilson & Wilson, P.C. ("Wilson") (Exhibit 5).

12. All the three lawsuits terminated unfavorably for Sinkine. Particularly, in the divorce case Sinkine's complaint was dismissed, judgment was entered for Babakaeva, no recovery for Sinkine occurred either by judgment or settlement.

13. On March 28, 2008 Sinkine and Babakaeva jointly demanded release of the funds by a letter directed to Wilson through Wilson's attorney, Robert Quadros of Quadros and Associates, P.C. (Exhibit 6).

14. Wilson communicated this letter to Plaintiff. On May 21, 2008 Schempf executed an Affidavit (Exhibit 7) asserting that the letter constitutes a ground for his allegation of parties' intention to remove funds out of the Commonwealth. Subsequently, on or about June 26, 2008 Plaintiff filed the Affidavit in support of its "Complaint for Pretrial Attachment".

15. The amount of the alleged debt ($31,408.88) represents the amount with which Plaintiff advanced Sinkine in connection with all three lawsuits: divorce, protective order and criminal case (Exhibits 8 and 9).

16. Seeking pretrial attachments of the Funds, Plaintiff filed an attachment bond payable only to Sinkine (Exhibit 10).

17. Plaintiff served a notice of the hearing for attachment on Wilson via a private process server pursuant to Va Code § 8.01-539 (Exhibit 11). Plaintiff also served on Paul Wilson all subsequent notices, motions, Orders and other papers filed in the attachment proceedings in the State Court.

18.    Wilson appeared in this action by counsel, Quadros and Associates, P.C.[2]

19.    On August 18, 2008 the State Court in non-adversary proceedings attached the whole amount of the funds allegedly in possession of Wilson and appointed the Clerk of Court as a receiver.

20.    Wilson was served with the Order by Plaintiff and/or Raymond Bacon and/or Robert Quadros (Exhibit 12).

21.    On December 17, 2008 Babakaeva removed this action to the Federal Court.

22.    On May 8, 2009 Plaintiff, acting by the proposed substituted counsel, filed Notice of Voluntary Dismissal, which was not signed by at least one attorney of record.

## IV. ARGUMENT

### A. Plaintiff's Notice of Voluntary Dismissal is Improper

**1. Plaintiff's Notice of Voluntary Dismissal is not Properly Signed Under Rule 11(a).**

Fed.R.Civ.P. 11(a) provides that *"Every pleading, written motion, and other paper must be signed by at least one attorney of record"*. As of the date of filing of "Notice of Voluntary Dismissal", the only attorneys of record were Raymond Bacon and Robert Quadros of Quadros and Assosiates, P.C., [Exhibit 14] but the Notice was signed only by Lawrence H. Glanzer.

**2. Voluntary dismissal of this action is governed by Rule 66, not Rule 41(a)(1).**

---

[2] Quadros and Associates, P.C. and its attorneys, Robert P. Quadros and Raymond B. Bacon, represented Paul Wilson's interests in this action by bringing oral and written arguments on his behalf. They were also representing Wilson & Wilson, P.C. in the State Court action Wilson&Wilson v. Babakaeva (Exhibit 13) and in dozens other lawsuits in different State Courts. In his communication, Paul Wilson usually refers to Robert Quadros as "[his] attorney".

A receiver was appointed in this action by the August 18, 2008 Order of the State Court. Under Fed.R.Civ.P. 41(a)(1)(A), the plaintiff's right to dismiss an action without a court Order is subject to Rule 66 which provides that *"An action in which a receiver has been appointed may be dismissed only by court order"*.

### 3. Responsive pleading substantially equivalent to answer was filed in the State Court

On July 23, 2008 Babakaeva filed the Petition Disputing Validity of the Attachment, -- the only responsive pleading she was permitted to file by the State law at that time, before she was admitted as a party defendant. The pleading rebuts the assertions of the Plaintiff's "Complaint[3] for Pretrial Attachment" and therefore is substantially equivalent to answer. Under Fed.R.Civ.P. 81(c)(2), repleading in this Court is unnecessary.

### 4. Dismissal under Rule 41(a)(1) is improper in this stage of litigation

The purpose of Fed.R.Civ.P. 41(a)(1)(A) is to facilitate voluntary dismissals, but to limit them to an early stage of the proceedings before issue is joined. *Moore's Fed.Practice 1007 (2d ed.)*. In a case where proceedings on plaintiff's motion for preliminary injunction required substantial efforts of defendants, the Court held that *"although the voluntary dismissal was attempted before any paper labeled 'answer' or 'motion for summary judgment' was filed, a literal application of Rule 41(a)(1) to the present controversy would not be in accord with its essential purpose of preventing arbitrary dismissals after an advanced stage of a suit has been reached"*, *Harvey Aluminum v. American, 203 F.2d 105 (2d Cir. 1953)*.

In this action, Babakaeva filed several papers which substantially joined the issue, and the amount of efforts required in preparation of the State Court filings, in defending against

---

[3] The applicable State law on attachment does not allow plaintiff to file a complaint for pretrial attachment. Every attachment shell be commenced by a petition, Va Code § 8.01-537.

6

Plaintiff's unsuccessful attempt to remand to State Court and in preparation to the settlement conference was substantial, and so were her costs. For this reason, voluntary dismissal pursuant to Fed.R.Civ.P. 41(a)(1)(A) would be prejudicial to Babakaeva.

### B. Attachment is not Properly Sued Out

Pursuant Fed.R.Civ.P. 64 and Va Code § 8.01-567, Babakaeva is entitled to bring certain defenses to attachment set forth below.

#### 1. Babakaeva Contests Liability of Principle Defendant to Plaintiff

Pursuant to Fed.R.Civ.P. 64 and Va Code § 8.01-567, Babakaeva is permitted to contest the liability of the principal defendant for the plaintiff's claim by proof of any manner which would constitute a good defense by the principal defendant to an action at law on such claim.

Plaintiff did not, and cannot, establish liability of Principal Defendant Sinkine for the following reasons:

(a) The contract memorized by the "Letter of Agreement" does not show liability on its face

Plaintiff contends that the only express contract between Plaintiff and Sinkine is a letter dated January 5, 2007 ("Agreement"), which allegedly represents the whole agreement. The plain reading of the therm of the contract shows that it transforms any debt existing at the time of executing the contract, and any future Sinkine's obligations to Plaintiff for legal services, into clear and unambiguous consideration. Sinkine agrees that 1) the payment shall be made; 2) by a closing agent; 3) from Sinkine's share of net equity of proceeds of sale of a house; and 4) Bryan Schempf may disclose the letter to the closing agent to ensure that the legal fees and costs are paid out of disbursement.

Plaintiff does not assert a legal theory how this contract leads to Sinine's liability. Instead, Plaintiff plainly contends that Sinkine *"incurred the total amount of $31,408.88, due and payable to Plaintiff"*, Paragraph 8 of Complaint. Plaintiff also apparently asserts that this amount represents Sinkine's debt. Such interpretation contradicts the plain reading of the contract, which provides a particular manner of compensating Plaintiff: it is to be paid by closing agent from Sinkine's share of net equity, and Bryan Schempf has burden to disclose the letter to the closing agent to ensure the payment.

By its form and substance, the agreement is not a negotiable instrument[4]. Moreover, Plaintiff does not allege that it attempted to present it for payment and/or that it was dishonored. Therefore, Sinkin's liability to Plaintiff is not available under VA Code § 8.3A and/or Uniform Commerce Code (UCC).

As apparent from the circumstances described in the "Agreement", Sinkine did not promise that his share will exist and that the size of the share will be sufficient to satisfy Plaintiff's demand, including for costs and fees not yet earned. Indeed, Sinkine was absolutely not in the position to make a promise to his attorney as to the particular outcome of the divorce lawsuit and to the amount of Plaintiff's final bill; and no reasonable attorney would rely on such promise made by his client. Rather Plaintiff was in a better position to make an estimate of recovery for the client in the particular form and amount of Plaintiff's future demand. As such, this provision is clearly contingent on the outcome of divorce.

Nowhere in Complaint or other papers Plaintiff asserts that "Sinkine's share of the net equity" has been established or that it exists at all, or that Sinkine has any beneficiary interests in

---

[4] It is obviously not a promissory note or security. It is also not a bill of exchange in that the agreement letter does not contain a payment order directed at the closing agent, Va Code § 8.3A-104.

the Funds. It is well-established common-law principle that the contingent liability does not arise if the contingent event on which the agreement contemplated has not occurred.

(b) Contract for legal services included impermissible maintenance and therefore is unenforceable

The alleged debt is not collectable because the alleged contract for legal services was a contract for maintenance in violation of Va Code § 54.1-3932 and common-law prohibition of maintenance, *in re. Primus 436 U.S. 412 (1978)*[5].

(c) Set-off for legal malpractice counter-claim exceeds the alleged amount of liability

As a proximate consequence of Bryan Schempf's negligence in rescinding the refinancing contract, Defendants sustained loss of property in the amount of $45,000.00. Pursuant to Va Code § 54.1-3906, Plaintiff is liable to Sinkine for the amount of the loss of marital assets proximately caused by its neglect.

**2. None of the Grounds for Attachment Set Forth in Va Code § 8.01-534 Exist**

Pursuant to Fed.R.Civ.P. 64 and Va Code § 8.01-567, Babakaeva is permitted to show that the attachment was not issued on any of the grounds set forth in Va Code § 8.01-534.

Pursuant to Va Code § 8.01-537, the Petition for attachment "shall also allege the existence of one or more of the grounds mentioned in Va Code §8.01-534, and shall set forth specific facts in support of the allegation". Plaintiff's Complaint alleges two grounds for attachment: Va Code § 8.01-534(A)(3)[6] and (B)(1)[7].

---

[5] "*Maintenance – helping another prosecute the case; champerty – maintaining a suit in return of financial interest in the outcome,*" *Id.*

[6] "... *intends to remove, or is removing, or has removed the specific property sued for, or his own estate, or the proceeds of the sale of his property, or a material part of such estate or proceeds, out of this Commonwealth so that there will probably not be therein effects of such debtor sufficient to satisfy the claim when judgment is obtained therefore should only the ordinary process of law be used to obtain the judgment.*"

[7] "... *the specific personal property sought to be levied or seized will be sold, removed,*

The only specific fact which Plaintiff alleges in support of the allegation of Va Code § 8.01-534(A)(3) is Paragraph 4 of the Affidavit, which states that "By the letter dated March 28, 2008, Sinkine and Babakaeva jointly requested that the fund being held by Paul Wilson be released to them jointly...". Indeed, both Sinkine and Babakaeva, lawfully requested that Wilson pay Funds to their joint account at American Funds Company with Virginia Service Center located in Norfolk, Virginia[8]. However, this fact is clearly insufficient to support allegation of intent to remove Funds out of the Commonwealth.

Plaintiff does not allege any other specific facts supporting its belief that Sinkine intends to remove the funds from the Commonwealth or secreted/disposed them.

*"It is not enough that an attaching creditor believes and alleges the fraudulent intent; he must prove reasonable and rational grounds for his allegations and belief as the basis of his attachment proceedings,"* <u>Burruss v. Trant, 88 Va. 980 (1892)</u>. Under this standard, Plaintiff plainly failed to satisfy the requirements of Va Code § 8.01-534.

### 3. Plaintiff is Not Likely to Succeed on the Merits of its Underlying Claim

Pursuant to Fed.R.Civ.P. 64 and Va Code § 8.01-567, Babakaeva is permitted to show that Plaintiff is not likely to succeed on the merits of underlying claim.

<u>(a) Plaintiff's claim on the Funds is not permitted under doctrine of champerty.</u>

Plaintiff asserts in the Complaint that it has "legal and/or equitable claim" on the property which was at issue in the divorce lawsuit. In Virginia, attorneys are barred from obtaining substantial property interest in the subject matter of litigation, except in a narrow list of

---

*secreted or otherwise disposed of by the defendant, in violation of an obligation to the plaintiff, so as not to be forthcoming to answer the final judgment of the court respecting the same."*

[8] American Funds Company has only two Service Locations, in Indiana and Virginia. Plaintiff did not and cannot present any evidence that Sinkine and/or Babakaeva had intention to relocate Funds out of Commonwealth, and particularly relocate them to Indiana.

circumstances and the manner provided by Va Code § 54.1-3932[9]. The section specifically states that it shall not affect the existing law in respect to champertous contracts.

Plaintiff asserts that the contract with Sinkine included the provision that, in exchange of providing legal services and advancing all fees and costs, Plaintiff obtains beneficiary interest in the cause of action.

In circumstances similar to this case, the State Court refused to grant an attorney writ of attachment against former client's property, holding that *"[c]hampertous contracts are, in this State, unlawful and for that reason void, and compensation for services rendered under them cannot be recovered upon a quantum merit, any more than upon the contracts themselves. .... An agreement by an attorney to carry on litigation at his own expense is in itself illegal, and there can be no recovery either on the agreement, or for services rendered thereunder.... Because a champertous contract is illegal, the law does not imply a promise to pay an attorney what his services were worth,"* Roller v. Murray, 112 Va. 780 (1911).

Plaintiff stated that it unsuccessfully attempted to enforce attorney charging lien against the same Funds. Plaintiff could not even claim an attorney charging lien on the Funds, and even if it could have, the attorney charging lien would be unenforceable because no recovery for the client occurred in the divorce case.

(b) Plaintiff's claim on the Funds in possession of Paul Wilson is invalid

It is a well-established principle that creditor cannot have greater right in *res* than debtor: *"plaintiff stands upon no higher ground than a defendant, and can acquire no greater right than a defendant himself possesses"*, Rollo v Andes Ins. Co. 64 Va. 509 (1873).

---

[9] The section provides that an attorney may obtain an attorney charging lien as security interest for fees and costs. In divorce attorney cannot exercise his claim before divorce is final and all residual property disputes are resolved.

Plaintiff not only failed to present or proffer any evidence to show that Sinkine has any beneficiary interest in the Funds but even failed to make any allegation to that effect. Because Sinkine's beneficiary interest is not established and even is not alleged, Plaintiff's claim on the Funds is without any support and without merit.

**4. Attachment is Invalid on its Face**

(a) The attachment bond is bad

The bond filed in this case is bad for the following reasons: (i) The surety bond does not conform to the state law in that it provides a condition to pay only to the named defendant rather than "*a condition to pay all costs and damages which may be awarded against the plaintiff, or sustained by any person, by reason of a wrongful levy or seizure.*", as required by Va Code § 8.01-537.1(D); and (ii) The amount of the surety bond filed in this action in the amount of $46,711.32 is clearly insufficient under Va Code § 8.01- 537.1(B),(C).

Therefore, Plaintiff failed to satisfy the mandatory statutory requirements of Va Code § 8.01- 537.1 and cannot obtain valid attachment unless the bond is replaced or reformed.

(b) Complaint for Pretrial Attachment does not state the nature of the underlying claim with required specificity

Under FedR.Civ.P.64 and pursuant to Va Code § 8.01- 537, "*the petition shall set forth (i) the plaintiff's claim with such certainty as will give the adverse party reasonable notice of the true nature of the claim and the particulars thereof.*"

The only statement in Complaint regarding the underlying claim, "Plaintiff has a legal and/or equitable claim to the funds held in the trust account of Wilson", does not provide any hint on the nature of the claim and gives no particulars. As appears from this contention, Plaintiff itself is uncertain if the nature of its claim is legal or equitable, and therefore neither legal nor

equitable claim is affirmatively stated. No nature or ground of the claim is supported by an affidavit. Therefore, Complaint plainly fails to satisfy the requirement of Va Code § 8.01- 537.

### C. Plaintiff completely failed to prosecute the underlying claim.

This action for Pretrial Attachment was commenced as an independent action and not in connection with a lawsuit on the underlying claim. The case docket of the State Court, Virginia Circuit Court for Newport News, shows no separate action of Plaintiff against Sinkine.

Pursuant to Va Code § 8.01- 569, *"if the plaintiff's claim be due at the hearing, and the court would otherwise have jurisdiction of an action against such defendant for the cause set forth in the petition, and such defendant has appeared generally, or been served with process, it shall retain the cause and proceed to final judgment as in other actions at law."*

The record in this action shows that Sinkine was properly served with summons and Complaint on July 7, 2008, and no objections were made. The State Court had subject matter jurisdiction over the underlying cause of action and personal jurisdiction over the parties. Complaint alleged that "the total amount of $31,408.88, due and payable to Plaintiff". Therefore, after the August 7, 2008 hearing on the attachment, Pursuant to Va Code § 8.01- 569 Plaintiff had an obligation to proceed on its underlying claim, and had a full opportunity to do so.

However, in nine months after the attachment was issued, Plaintiff had not make any affirmative steps to litigate the underlying claim on the merits. Moreover, Plaintiff even did not attempt to assert the cause of action to initiate the proceedings on the underlying claim. No excuse for the delay was ever alleged. In the action where property of defendant was taken from trustee and placed into receivership, Plaintiff is required to exert reasonable diligence in prosecuting the underlying claim on the merits.

13

Even if the attachment were properly sued out, the startling Plaintiff's failure to proceed on its underlying claim without reasonable excuse would require that the attachment be quashed. *"Provisional remedy of receivership should not be continued indefinitely in favor of plaintiff who neglects or refuses to bring his action to trial," Levin v. Ruby Trading Corp. , 352 F.2d 508 (2d Cir. 1965).*

### D. Babakaeva is Entitled to the Restoration of the Attached Effects, Damages.

Pursuant to Fed.R.Civ.P 64 and Va Code § 8.01- 568, upon quashing attachment defendant *"shall recover his costs, and damages for loss of the use of his property, and there shall be an order for the restoration of the attached effects".*

Two Orders were issued by the State Court regarding Funds: July 16, 2008 Order placing a lien[10] and August 18, 2009 Order assigning receivership.

After the date that Funds were attached, Babakaeva does not have any accounting for the money and is not able to determine its location. Therefore, simply dissolving the Orders will not likely to restore her property rights.

While court loses jurisdiction over receivership property once receivership is terminated and no motions may be entertained in receivership proceeding after its termination, *"court has jurisdiction and power to tax receivership costs and expenses even though receiver pendente lite has been discharged, where court, terminating receivership, specifically retained jurisdiction for purpose of taking any action that might be appropriate to give effect to or enforce its order",* <u>Tanzer v. Huffines , 315 F. Supp. 1140 (D. Del. 1970)</u>

---

[10] Order does not show a dollar amount of the lien, but merely states that some unknown and obscurely described portion of money should be attached.

## V. CONCLUSION

For the foregoing reasons, Defendant Tatyana A. Babakaeva respectfully submits that Plaintiff's Notice of Voluntary Dissmissal should be stricken as improper under Fed.R.Civ.P. 66; and that the Court should enter an Order quashing attachment to Fed.R.Civ.P. 64 and Va Code § 8.01-568; and that the Court should make Order for restoration of the attached effects pursuant to Fed.R.Civ.P. 64 and Va Code § 8.01-568 and retain jurisdiction to effectuate and enforce such Order; and that the Court should award Babakaeva costs pursuant to Va Code § 8.01-568 and 28 U.S.C. § 1920.

DATED this 11th day of May, 2009.

*Tatyana A Babakaeva*
Tatyana A. Babakaeva, *pro se*
2124 Criston Dr
Newport News, VA 23602
Phone: (757) 249-3072
Faximile: (757) 249-3072

## CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of May, 2009 I will mail a true and accurate copy of the foregoing brief by USPS first-class mail, postage prepaid, to the following individuals:

Robert P. Quadros, Esq.
Counsel for the Plaintiff
Quadros & Associates, P.C.
2715 Huntington Ave.
Newport News, Virginia 23607

Raymond B. Bacon, Esq.
Counsel for the Plaintiff
Quadros & Associates, P.C.
2715 Huntington Ave.
Newport News, Virginia 23607

Lawrence H. Glanzer, Esq.
Roussos, Lassiter, Glanzer & Marcus, PLC
P.O. Box 3127
Norfolk, Virginia 23514

*Tatyana A Babakaeva*
Tatyana A. Babakaeva, *pro se*
2124 Criston Dr
Newport News, VA 23602
Phone: (757) 249-3072
Faximile: (757) 249-3072