**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Newport News Division**

JONES, BLECHMAN, WOLTZ
& KELLY, P.C.,

      Plaintiff,

v.                                                      C/A No. 4:08cv123

NIKOLAI SINKINE and
TATYANA A. BABAKAEVA,

      Defendants.

**RESPONSE OF PLAINTIFF TO MEMORANDUM**
**IN OPPOSITION TO NOTICE OF VOLUNTARY DISMISSAL**

The response of the Plaintif, Jones, Blechman, Woltz & Kelly, P.C. ("JBWK"), to the motion of Tatyana A. Babakaeva ("Babakaeva") in opposition to the voluntary dismissal of this removal action, respectfully states and represents as follows:

Statement of the Case

On or about June 23, 2008, JBWK initiated a pre-judgment attachment proceeding in the Circuit Court for the City of Newport News, Virginia, against Nikolai Sinkine and certain funds held in the trust account of Paul Wilson, an attorney. On July 21, 2008, Babakaeva, asserting an interest in the funds, filed a pleading entitled, "Petition Disputing Validity of Attachment and Stating a Third-Party Interest in the Property Sought to be Attached," in which she set forth arguments in support of her opposition to the attachment of the funds, and also asserted her own interest in those funds. At the time she filed the pleading, she was not yet a party to the attachment action. However, Babakaeva thereafter filed a motion asking leave to intervene in the action as a defendant, filing the same with the state court on August 6, 2008. An order was

entered on November 17, 2008, granting Babakaeva leave to intervene and admitting her to the action as a co-defendant.

Between the time that Babakaeva filed her motion to intervene and the entry of the order granting it, the state court entered an order, on August 18, 2008, directing that the money be paid into the hands of the Clerk.  (Babakaeva appears to believe that this order constituted the Clerk of the Newport News Circuit Court a receiver, but it is clear, from the wording of the order, that this is either an error of analysis on her part or else a problem of usage for Ms. Babakaeva, for whom English is not a first language.)

Subsequent to the state court's entry of the order granting her leave to intervene and making her a co-defendant in the action, and subsequent to the order directing the payment of the funds in the hands of Paul Wilson to the Clerk of that court, Babakaeva filed papers initiating the removal of the action to this Court, based on diversity of citizenship and the amount in controversy.  Various pleadings were filed with regard to the removal of the action and a hearing was held before Magistrate Judge Miller.  At the conclusion of that hearing, Judge Miller instructed then-counsel for JBWK, Raymond Bacon, that he and his firm, Quadros & Associates, P.C., would have to withdraw from the case, due to a determination that a conflict existed.  (This is noted at Docket Entry #10.)  In compliance with Judge Miller's order, a motion for substitution was filed.  However, before the Court acted on that motion, JBWK, through its new attorney, Lawrence Glanzer, filed notice of voluntary dismissal, pursuant to Rule 41(a)(1)(A)(i), F.R.Civ.P.  Babakaeva thereupon filed her motion and supporting memorandum opposing the voluntary dismissal of the action.  This memorandum is in response thereto.

Questions Presented

1.      Was the posture of this action such that JBWK could invoke Rule 41(a)(1)(A)(i) to dismiss this action, voluntarily and without the consent of the defendants?

2.      Was the Notice of Dismissal properly filed on behalf of JBWK?

Argument

**I.    All conditions for termination of this action by notice of dismissal under Rule 41(a)(1)(A)(1) were satisfied in this case and there is no basis for granting Babakaeva's motion to vacate the dismissal that has been accomplished by JBWK.**

Although Babakaeva clearly wants to argue the merits of the prejudgment attachment initiated on behalf of JBWK in Newport News Circuit Court and removed to this Court, she should not be permitted that opportunity if the action was properly terminated by the Notice of Dismissal that was filed on May 8, 2009.

Rule 41(a)(1) states:

(a)    Voluntary Dismissal

    (1)    *By the Plaintiff*

        (A)    *Without a Court Order.* Subject to [inapplicable conditions] and any applicable federal statute, the plaintiff may dismiss an action without a court order by filing:

            (i)    a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment; . . .

Babakaeva argues that dismissal by notice, without her consent, was improper for three substantive reasons. Her first reason is that Rule 66, F.R.Civ.P., prohibited JBWK from doing so, in that there had been a receiver appointed by the state court, in its order of August 18, 2008. Her second reason is that a pleading "substantially equivalent to an answer" was filed in state court, thereby eliminating the option of unilateral dismissal. Finally, she asserts that matters

3

have gone too far along, both in state court and before this Court, for dismissal under Rule 41(a)(1)(A)(i) to be proper. In each instance, Babakaeva is wrong.

> **A. Rule 66, F.R.Civ.P., has no application to the circumstances of this attachment action, in that no receiver has been appointed, either by this Court or the state court from which removal of this action was taken.**

The easiest answer to the argument by Babakaeva with respect to Rule 66, F.R.Civ.P., is found in an inspection of the order of August 18, 2008, entered by the Newport News Circuit Court, a copy of which is appended hereto as Exhibit 1, for ease of reference. (It was also filed by Babakaeva, previously, as Exhibit A2 to her Notice of Removal.) There is no mention in that order of the appointment of a receiver by the Newport News Circuit Court, nor did the order make the Clerk of that court a party to the attachment action pending before it.

Courts of record in Virginia are given jurisdiction to appoint receivers in Chapter 22 of Title 8.01 of the Code of Virginia (1950, as amended). Section 8.01-582 is entitled, "Appointment of general receivers; their duties; audit of funds," and it begins:

> Any circuit court may appoint a general receiver of the court, who may be the clerk of the court, and who shall hold his office at its pleasure. The general receiver's duty shall be, unless it is otherwise specially ordered, to receive, take charge of and hold all moneys paid under any judgment, order or decree of the court, and also to pay out or dispose of same as the court orders or decrees."

The second paragraph of the section, however, states, in relevant part:

> Unless otherwise ordered by the court, the provisions of this section shall not apply to:
>
> . . .
>
> 2. Cash or other money paid or deposited in the clerk's office prior to final disposition of the case, including but not limited to interpleaders or eminent domain; . . .

The August 18 order merely directs that Paul Wilson pay to the Clerk, for holding pending final disposition by the court, the sums that were made the subject of the attachment. It

4

does not direct that the Clerk hold the money as receiver, nor does it make the Clerk a party, in the capacity of receiver, to the proceedings.

The clearest indication that no receiver has been appointed in this action is that no receiver is named or identified anywhere as a party to the action as it was presented to this Court. Certainly, the Clerk of the state court is not named anywhere as a party to the instant federal action, nor is anyone else before this Court in the capacity of receiver.

Babakaeva's resort to Rule 66 is also misplaced in that the provisions of Rule 66 apply to Federal equity receivers, not to state-appointed receivers. The Advisory Committee Notes to the Rule make this point from the beginning: the subject of the rule is "federal equity receivers." The very next paragraph of the Note addresses the question of dismissal of cases involving receivers: " . . . Rule 66 prevents a dismissal by any party, *after a federal equity receiver has been appointed*, except upon leave of court." (emphasis added) Lest there be any lingering doubt, the Note observes, in the fourth paragraph, that "[c]apacity of a state court receiver to sue or be sued in Federal court is governed by Rule 17(b)." The only reasonable conclusion, from this, is that Rule 66 has no application to a case, such as this, in which no federally appointed equity receiver is a party.

  **B.**  **No answer has ever been filed by a party defendant, nor was a summary judgment motion filed by a defendant, making dismissal under Rule 41(a)(1)(A) proper and unopposable.**

Babakaeva argues, at sections A.3 and A.4 of her memorandum, that dismissal under Rule 41(a)(1)(A) is improper because she had filed a pleading that was the "substantial equivalent" of an answer and because the case had progressed too far to permit the use of Rule 41(a)(1)(A)'s provisions. These positions are contrary to the law in the Fourth Circuit and to the facts of this case.

Babakaeva states that the pleading she filed before she was admitted as a party, which she had entitled, "Petition Disputing Validity of the Attachment" (the "Counter-Petition"), responds to the Complaint for Attachment and should be treated as an answer.  A copy of the pleading in question was appended to Babakaeva's Notice of Removal as Exhibit B, and is appended hereto, for ease of reference, as Exhibit 2.  Without going into a paragraph by paragraph exegesis of the pleading, it is submitted that the Counter-Petition is not an answer to the allegations of Complaint for Attachment, but a motion and argument supporting Babakaeva's effort to make herself a party to the action in state court for the purpose of protecting her interests in the *res*.  It makes substantially new allegations of facts and cites statutes and rules in support of her position.  At the conclusion of Paragraph 10 of the Counter-Petition, she argues that the Complaint for Attachment is insufficient, as a matter of law, language that is consistent with a demurrer, or motion to dismiss, but not with an answer, which is a party's response to factual allegations.  According to Rule 3:8 of the Rules of the Supreme Court of Virginia, "[a]n answer shall respond to the paragraphs of the complaint."  The Counter-Petition does not do that.  It is not an answer, under Virginia procedure.

Any leeway that may be sought by Babakaeva in this regard, on the grounds that she is a *pro se* litigant, would be unwarranted.  Although no attorney has signed any of the pleadings she has filed in state court or in this Court in connection with this matter, it is very unlikely that these pleadings, that make reference to statutes, rules and case law, using citation formats that substantially conform to professional standards, and that incorporate both professional legal

6

jargon and arcane legal concepts,[1] were prepared by Babakaeva without the assistance of counsel.

In many respects, this action is procedurally similar to the case of *Marex Titanic, Inc. v. The Wrecked and Abandoned Vessel, etc.*, 2 F.3d 544 (4th Cir. 1993). Marex Titanic, Inc. filed an action in this Court seeking to gain sole ownership and control over objects recovered from the HMS Titanic or, alternatively, that it be granted a salvage award. It represented to this Court that all competing salvage claims had been abandoned. Based on Marex's representations, a warrant of arrest was issued and published. On the same date of publication of the warrant of arrest, Titanic Ventures entered a special appearance seeking to vacate the warrant of arrest, alleging that it had been obtained by use of factual misrepresentations and asserting that sole jurisdiction over the Titanic lay with the government of France (a pleading that is comparable to the pleading filed by Babakaeva in the Newport News Circuit Court opposing the Complaint for Attachment). Six days later, the Court began hearings, in the course of which a temporary restraining order was issued to stop Marex from salvaging the wreck believed to be the Titanic until further order. The district judge made it known that he believed he had been misled by Marex and, after three days of hearings, Marex filed a notice of voluntary dismissal, pursuant to Rule 41(a)(1)(i)[2]. Finding that the parties had argued the merits of their cases and had introduced substantial evidence in support of their positions, the district court vacated the

---

[1] By way of example, see page 9 of Babakaeva's Memorandum in Opposition to Dismissal, at item B.1.b, where she challenges JBWK's contract for legal services as violating Va. Code Annot. §54.1-3932 and a common law prohibition of "maintenance," which is related to champerty. (The statute in question actually deals with attorneys' liens for fees, not ethically prohibited contracts.)

[2] So cited in the opinion. It is believed that the correct citation should have been to Rule 41(a)(1)(A)(i). The Advisory Committee Notes to this rule do not indicate that it was amended subsequent to the Fourth Circuit's decision in *Marex* in any way that is relevant here.

7

dismissal and proceeded to award Titanic Ventures the relief it sought, over the objection of Marex.

On appeal, the Fourth Circuit limited its review to the question of whether vacation of the dismissal violated Rule 41(a)(1)(i), F.R.Civ.P.  Finding that Titanic Ventures had filed neither an answer nor a motion for summary judgment prior to Marex's filing of its notice of dismissal under the Rule, the Court of Appeals held that the plain language of the Rule required that the dismissal be honored and reversed the order from which appeal was taken, stating:

> As the Rule's text makes plain, the universe of plaintiff-initiated, voluntary dismissals is broken into two categories. If the plaintiff files a notice of dismissal before the adverse party serves it with 'an answer or a motion for summary judgment', the dismissal is available as a matter of unconditional right, *see Matthews v. Gaither, 902 F.2d 877, 880 (11th Cir. 1990)*; *see also Kenrose Mfg. Co. v. Fred Whitaker Co., 512 F.2d 890, 895 (4th Cir. 1972)*, and is self-executing, i.e., it is effective at the moment the notice is filed with the clerk and no judicial approval is required. *See Fed. R. Civ. P. 41* ("an action may be dismissed by the plaintiff *without order of the court*" (emphasis supplied)); . . .

*Marex, supra*, 2 F.3d at 546.

The Court of Appeals based its decision on the absence of one of the two pleadings that could have derailed the voluntary dismissal, an answer or a motion for summary judgment.  It did not matter that Titanic Ventures had filed pleadings in the action that challenged Marex's right to a warrant of arrest against the wrecked vessel; it mattered only that the pleadings it filed did not include an answer or motion for summary judgment.  So, here, Babakaeva may have filed pleadings that raised substantive issues about JBWK's right to an attachment of funds in the hands of Paul Wilson, but she did not file a pleading that was denominated, or was, in fact, an answer or a motion for summary judgment.  That fact is critical to the outcome of her present motion.

The Fourth Circuit went further, however, and also made it clear, beyond question, that it did not matter how much activity there had been in the case at the time of the filing of the notice

of dismissal, nor that the trial court had taken evidence over the course of three days, nor that significant time had been spent in argument over the merits of the case:

> When Marex filed its notice of dismissal, Titanic Ventures had not filed an answer or a motion for summary judgment and under *Rule 41(a)(1)(i)* the action was terminated and the district court's interlocutory orders were vacated.

*Marex, supra*, 2 F.3d at 547. In reaching this holding, the Court of Appeals necessarily addressed the legal authority on which the trial court had placed its heavy reliance in vacating the dismissal, *Harvey Aluminum v. American Cyanamid Co.*, 203 F.2d 105 (2d Cir.), *cert. den.*, 345 U.S. 964, 97 L.Ed. 1383, 73 S.Ct. 949 (1953), which had carved out an exception to the right of a plaintiff to dismiss a case without action by the court after "an advanced stage of a suit had been reached." The Court of Appeals stated, without equivocation, "[w]ith the issue squarely before us, we reject the *Harvey Aluminum* exception to the plain meaning of *Rule 41(a)(1)(i)*'s text." *Marex, supra*, 2 F.3d at 547.

This ruling, which remains the law in this Circuit, is fatal to Babakaeva's argument that dismissal by JBWK under Rule 41(a)(1)(A)(i) was improper by virtue of all the work that had been done in the case by her up to the point of the filing of the notice of dismissal. Babakaeva's argument depends, entirely, on the Second Circuit's decision in *Harvey Aluminum,* which is exactly contrary to the law of this Circuit. Accordingly, her argument must fail and the dismissal allowed to stand, undisturbed.

**II. The notice of dismissal was signed and filed by a licensed Virginia attorney, admitted to practice before the bar of this Court, and must be accepted as a properly filed pleading.**

When Magistrate Judge Miller ruled, at the conclusion of the settlement conference over which he presided, that JBWK's original counsel, Raymond Bacon, of Quadros & Associates, P.C., would have to withdraw, due to a conflict of interest issue that was raised by Babakaeva,

JBWK immediately sought out new representation. A motion was filed by Mr. Bacon, seeking leave of the Court to withdraw his appearance on behalf of JBWK, as directed by Judge Miller. However, before that motion could be acted on by the Court, new counsel for JBWK prepared and filed the Rule 41 notice of dismissal to which Babakaeva now objects. In addition to her procedural arguments about the notice of dismissal, Babakaeva also complains that it was improperly signed and filed because the attorney responsible for that pleading was someone other than Mr. Bacon. Her position is not well-taken and must be rejected.

Babakaeva starts with the proposition that Rule 11(a), F.R.Civ.P., requires that a pleading, written motion or other paper filed with the Court must be signed by at least one attorney of record. Although her memorandum offers only a partial quotation from the Rule, the relevant provision is there and JBWK does not disagree with the general proposition that if a pleading is filed, it must be signed by counsel, if the party offering the paper for filing is represented by counsel. The dispute raised by Babakaeva seems to turn on the question of how an attorney becomes counsel of record for a party to litigation before this Court.

It is true that, in the absence of an order granting Mr. Bacon's motion for leave to withdraw his appearance, he remained counsel of record for JBWK. It is not true, however, that this precluded the appearance of any other attorney as *additional* counsel of record for JBWK. By signing the notice of dismissal and causing it to be filed, new counsel for JBWK entered his appearance and became "of record" in the case on behalf of JBWK.

In order to make an appearance in a case pending before this Court, an attorney must satisfy the requirements of Local Rule 83.1. To be eligible to practice before this Court, an attorney must be a member of the bar in good standing in the Supreme Court of Virginia. The attorney must then make application and satisfy the procedural and substantive requirements of

L.R. 83.1, after which a certificate of qualification is issued to the attorney. In the case of JBWK's new counsel, that process was completed, and the certificate of admission issued, in February, 1977.

The next requirement for making an appearance on behalf of a party in a case before this Court is that, on any initial pleading filed by the attorney making such appearance, his or her Virginia State Bar Identification Number be set forth. L.R. 83.1(B). That requirement was satisfied in the case of the notice of dismissal.

Subsection (F) of L.R. 83.1 states that an attorney presenting papers or pleadings for filing, or making an appearance, must be a member of the bar of this Court. As already noted, that requirement has been met by the attorney who signed the notice of dismissal. The subsection goes on to note that any attorney who joins in a pleading, motion or other paper filed with the Court will be held accountable for the case by the Court. By implication, an attorney who is admitted to practice in the Eastern District of Virginia who signs a pleading that is then filed with the Court becomes "counsel of record" in the case for the party on behalf of whom the pleading or paper was filed. Having made such an appearance, no attorney may withdraw from the case except on order of the Court. L.R. 83.1(G).

The only other question that could be asked, then, is whether or not the notice of dismissal was filed by current counsel with the knowledge and authorization of JBWK. The answer is, unequivocally, yes. Moreover, by signing, and then filing, the notice of dismissal, current counsel knowingly made himself subject to the requirements and obligations of Rule 11, F.R.Civ.P., and L.R. 83.1. Among other things, this means that current counsel certifies that, to the best of his knowledge, information and belief, (1) the notice of dismissal was not being presented for any improper purpose, (2) the legal contentions of the notice of dismissal were

warranted by existing law or by a nonfrivolous argument and (3) there was a valid and sufficient factual basis for the notice of dismissal. *See* Rule 11(b), F.R.Civ.P.

Finally, the filing of the notice of dismissal is not made ineffective or invalid because Mr. Bacon had not yet been given leave to withdraw from the action. To avoid even the appearance of impropriety, in light of Judge Miller's instructions to him, Mr. Bacon did not join in or sign the notice of dismissal. However, there is no rule that prohibited the filing of the notice of dismissal by a new attorney on behalf of JBWK while Mr. Bacon's motion to withdraw was pending. The only effect of what happened is that, for the brief interval that occurred between the filing of the notice of dismissal and the resulting self-executing termination of the case, JBWK had two attorneys of record, from two different firms.

## CONCLUSION

For the foregoing reasons, Plaintiff, Jones, Blechman, Woltz & Kelly, P.C., respectfully prays that the Court find that the filing of the notice of dismissal pursuant to Rule 41(a)(1)(A(i) was both permissible and proper, that the resulting dismissal of the action and termination of the case was a necessary and unopposable result of the filing of the notice of dismissal, that there is no basis on which the Court may now vacate the dismissal and consider the merits arguments advanced by Defendant Babakaeva, that her Memorandum in Opposition to Plaintiff's Notice of Voluntary Dismissal and Memorandum in Support of Motion to Quash Attachment be dismissed as moot, and that Plaintiff have such other and further relief as to the Court may appear proper.

    /s/ *Lawrence H. Glanzer*
Lawrence H. Glanzer (VSB No. 15831)
Roussos, Lassiter, Glanzer & Marcus, PLC
P. O. Box 3127
Norfolk, VA 23514-3127
Telephone:  757-622-9005
Telefacsimile:  757-624-9257
Internet e-mail:  glanzer@rlglegal.com
Of counsel for Jones, Blechman, Woltz & Kelly, P.C.

## CERTIFICATE OF SERVICE

I hereby certify that I will file the foregoing pleading with the Clerk of Court using the CM/ECF system on June 12, 2009, which will then send a notice of electronic filing to the following person:

    Raymond B. Bacon, Esquire
    Quadros & Associates, P.C.
    2715 Huntington Avenue
    Newport News, VA 23607
    Internet e-mail:  pj@quadros.hrcoxmail.com

I further hereby certify that I will send a copy of the foregoing pleading by first-class mail, postage prepaid, to the following non-users:

| | |
|---|---|
| Nikolai I. Sinkine | Tatyana A. Babakaeva |
| 28 Kincaid Lane | 2124 Criston Drive |
| Hampton, VA 23666 | Newport News, VA 23602 |

Robert P. Quadros, Esquire
Quadros & Associates, P.C.
2715 Huntington Avenue
Newport News, VA 2607

    /s/ *Lawrence H. Glanzer*
Lawrence H. Glanzer (VSB No. 15831)
Roussos, Lassiter, Glanzer & Marcus, PLC
P. O. Box 3127
Norfolk, VA 23514-3127
Telephone:  757-622-9005
Telefacsimile:  757-624-9257
Internet e-mail:  glanzer@rlglegal.com
Of counsel for Jones, Blechman, Woltz & Kelly, P.C.